

**FILED**
SEP 1 8 2014
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

Thomas Poor Bear, Don Doyle,
Cheryl D. Bettelyoun and James Red
Willow,

                Plaintiffs,

vs.

The County of Jackson, a political
subdivision and public corporation
organized under the laws of the State
of South Dakota; the Board of
Commissioners for the County of
Jackson, a political subdivision and
public corporation organized under
the laws of the State of South Dakota;
Vicki Wilson in her official capacity
as the Jackson County Auditor; Glen
Bennett, Larry Denke, Larry
Johnston, Jim Stilwell and Ron
Twiss, in their official capacities as
Jackson County Commissioners,

                Defendants.

Case No. 14-5059

**COMPLAINT FOR
INJUNCTIVE AND
DECLARATORY RELIEF
(52 U.S.C. § 10301 (formerly 42
U.S.C. § 1973); 42 U.S.C. § 1983;
Fourteenth Amendment to the
United States Constitution)**

**INTRODUCTION**

1.    This case arises from Defendants' refusal to establish a satellite office for voter registration and in-person absentee voting in the Town of Wanblee on the Pine Ridge Reservation, thereby making voting less available to Native Americans in Jackson County in violation of Section 2 of the Voting Rights Act of 1965 and the Fourteenth Amendment to the United States Constitution. Specifically, because in-person voter registration and in-person

1

absentee voting are limited to the county seat of Kadoka, Native American residents of Jackson County are required to travel, on average, approximately twice as far (and such travel takes approximately twice as much time) to take advantage of in-person registration and in-person absentee voting in comparison to white residents of Jackson County. Establishing a satellite office in Wanblee, on the other hand, would substantially reduce the distance and travel time for both groups, would essentially equalize the average travel time and distance for the two groups, and would thereby provide Native Americans an equivalent level of access to in-person registration and in-person absentee voting.

2. Due to socioeconomic factors, such as poverty, homelessness and lack of reliable public and private transportation, and due to the history of racial discrimination and hostility toward Native Americans, the significantly greater average distance required for Native Americans in Jackson County to reach the county seat of Kadoka will make it substantially more difficult, if not impossible, for them to take advantage of the convenience and benefits of in-person registration and in-person absentee voting, relative to white residents of Jackson County.

3. As a result, Native Americans do not have an opportunity equal to that of the white residents in Jackson County to use in-person registration and the 46 days of in-person absentee voting.

4. Defendants have no legitimate, non-racial reason for refusing to establish the satellite office.

5. Defendants' failure to establish a satellite absentee voting and registration office in Jackson County violates Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301(a) and (b) ("Section 2") (formerly 42 U.S.C. § 1973(a) and (b)) and the Fourteenth Amendment to the United States Constitution.

6.     Accordingly, Plaintiffs ask this Court to grant them declaratory and injunctive relief compelling the Defendants to establish a satellite office in the community of Wanblee, and/or at other appropriate location(s), to remedy the violation of the Plaintiffs' rights and to give them an equal opportunity to participate in the in-person registration and the 46 days of in-person absentee voting that is enjoyed by white residents of Jackson County.

## JURISDICTION AND VENUE

7.     This case arises under the Constitution and laws of the United States. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343; 52 U.S.C. § 10301(a) and (b); and 42 U.S.C. § 1983. This Court has jurisdiction to grant both declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the claims or omissions giving rise to Plaintiffs' claims occurred, and are occurring, in the County of Jackson, South Dakota.

## PARTIES

9.     Plaintiff Thomas Poor Bear is a member and Vice President of the Oglala Sioux Tribe. Plaintiff Poor Bear is qualified and registered to vote in the State of South Dakota and his residence, as defined in S.D.C.L. § 12-1-4, is Wanblee, Jackson County.

10.    Plaintiff Don Doyle is a member of the Oglala Sioux Tribe. Plaintiff Doyle is qualified and registered to vote in the State of South Dakota and his residence, as defined in S.D.C.L. § 12-1-4, is Wanblee, Jackson County.

11. Plaintiff Cheryl D. Bettelyoun is a member of the Oglala Sioux Tribe. Plaintiff Bettelyoun is qualified and registered to vote in the State of South Dakota and her residence, as defined in S.D.C.L. § 12-1-4, is Long Valley, Jackson County.

12. Plaintiff James Red Willow is a member of the Oglala Sioux Tribe. Plaintiff Red Willow is qualified and registered to vote in the State of South Dakota and his residence, as defined in S.D.C.L. § 12-1-4, is Wanblee, Jackson County.

13. Plaintiffs reside on the Pine Ridge Reservation in Jackson County, South Dakota. The Pine Ridge Reservation is an Oglala Sioux Native American Reservation. The Oglala Sioux Tribe is a federally-recognized tribe with a government-to-government relationship with the United States.

14. Defendant County of Jackson is a political subdivision and public corporation organized and existing under the laws of the State of South Dakota. South Dakota law provides that the County may sue and be sued in any court in the state.

15. Defendant Vicki Wilson is the Jackson County Auditor and is sued in her official capacity. As County Auditor, Defendant Wilson's duties include, but are not limited to, making and delivering notices of special and general elections; making abstracts of and canvassing the votes cast at any special or general election; issuing certificates of election to members of the legislature, county, and precinct officers; and forwarding the abstracts of votes cast at general or special elections to the Secretary of State. In addition to the duties relating to elections, the South Dakota code also requires the County Auditor to serve as the Clerk of the County Commissioners, and is responsible for keeping an accurate record of the board of commissioners' official proceedings and preserving all of the documents, books, records, maps and other papers required to be deposited or kept in his/her office.

16. Defendant Board of Commissioners for the County of Jackson exercises the power of the County as a political subdivision, body politic, and public corporation. South Dakota law requires the Board of County Commissioners to establish election precincts and designate polling places within those precincts.

17. Defendant Glen Bennett is the Chairman of the Board of Commissioners for the County of Jackson and is sued herein in his official capacity.

18. Defendant Larry Denke is a member of the Board of Commissioners for the County of Jackson and is sued herein in his official capacity.

19. Defendant Larry Johnston is a member of the Board of Commissioners for the County of Jackson and is sued herein in his official capacity.

20. Defendant Jim Stilwell is a member of the Board of Commissioners for the County of Jackson and is sued herein in his official capacity.

21. Defendant Ron Twiss is a member of the Board of Commissioners for the County of Jackson and is sued herein in his official capacity.

## FACTUAL ALLEGATIONS

22. South Dakota has "no excuse" absentee voting, which permits any voter to vote absentee. Absentee voting begins 46 days before an election.

23. South Dakota offers in-person absentee voting at the office of the county auditor in each county. Once absentee voting has begun, citizens may register to vote and vote in-person absentee at the same time at the office of the county auditor until 15 days before Election Day. In-person absentee voting continues until Election Day.

24. Offices that will be on the ballot for Jackson County voters this November include U.S. Senator, U.S. Representative, Governor and Lieutenant Governor, Secretary of

5

State, Attorney General, State Auditor, State Treasurer, Commissioner of School and Public Lands, Public Utilities Commissioner, State Senator for District 27, State Representative for District 27 and three positions for the South Dakota Sixth Circuit Court. In addition, the November ballot includes a state constitutional amendment question and a number of initiated measures on other issues.

### Jackson County and the Pine Ridge Reservation

25. The Pine Ridge Reservation is in southwestern South Dakota. It encompasses all of Shannon County, the southern half of Jackson County and the northwest portion of Bennett County.

26. The Pine Ridge Reservation has a total population of 18,834, of which approximately 88%, or 16,580, are Native American. U.S. Census Bureau, 2010 Census.

27. According to the 2010 Census, the population of Jackson County is 3,031, of which 52.0% are American Indian or Alaska Native (alone); 42.7% are white (alone); and 4.5% are white and American Indian/Alaska Native. U.S. Census Bureau, 2010 Census, Table DP-1. As of the 2010 Census, the voting age population of Jackson County is 2,034, of which 44% are American Indian or Alaska Native (alone); 51% are white (alone) and; and 3.9% are white and American Indian or Alaska Native. *Id.*

28. The 2012 American Community Survey ("ACS") estimated that in the City of Kadoka, 94.5% of the population is white and 5.2% of the population is American Indian/Alaska Native, whereas in Wanblee, 1.6% of the population is white and 95.5% is American Indian/Alaska Native. U.S. Census Bureau, 2008-2012 American Community Survey 5-Year Estimates, Table DP05. According to the 2010 Census, in the City of Kadoka, 84% of the voting age population is white (alone) and 12% of the voting age population is American Indian/Alaska

6

Native (alone), whereas in Wanblee, 3.5% of the voting age population is white (alone) and 92% of the voting age population is American Indian/Alaska Native (alone). U.S. Census Bureau, 2010 Census, Table P10.

29. Kadoka and Wanblee are the two most populous cities or towns in Jackson County.

**Availability of In-Person Registration and Absentee Voting in Jackson County**

30. The only location currently designated for in-person voter registration and the 46-day period of in-person absentee voting in Jackson County is in Kadoka, which is the seat of Jackson County.

31. Kadoka is not on the Pine Ridge Reservation.

32. The location for in-person absentee voting in Kadoka is, on average, significantly closer to and more convenient for the white population of Jackson County than for the Native American population of Jackson County.

33. The distance from Wanblee to Kadoka is approximately 27 miles, and the travel time between the two towns is approximately 32 minutes.

34. There is a significant disparity between the average time it takes for white residents of Jackson County to reach the county seat and the average time it takes for Native Americans to reach the county seat. Native Americans must travel, on average, twice as far as whites (which takes, on average, twice the time) in order to reach the location for in-person registration and in-person absentee voting in Kadoka. That problem is exacerbated by the significant number of Native Americans without access to reliable transportation.

35. There is no reliable public transportation in Jackson County, and a substantial portion of the Native American population lacks access to reliable private transportation.

According to the 2006-2010 ACS estimates, 22.3% of occupied housing units in Jackson County in which there is at least one person who is American Indian or Alaska Native (alone) have no vehicle available. 2006-2010 American Community Survey 5-Year Estimates, Table DP04 (American Indian and Alaska Native Alone). By contrast, zero occupied housing units in Jackson County in which whites reside have no vehicle available. 2006-2010 American Community Survey 5-Year Estimates, Table DP04 (White Alone).

36. The poverty and unemployment rates for Native Americans in Jackson County are much higher than for the white residents of the County. According to the 2006-2010 ACS estimates, in Jackson County, 52.9% of Native Americans live below the poverty level, 44.2% are unemployed and 75.1% have received Food Stamps/SNAP benefits within the last 12 months. 2006-2010 American Community Survey, Table DP03 (American Indian and Alaska Native Alone). By contrast, in Jackson County 11.5% of whites live below the poverty level, 1.4% are unemployed, and 1.5% have received Food Stamps/SNAP benefits within the last 12 months. 2006-2010 American Community Survey, Table DP03 (White Alone).

### Request for a Satellite Office in Wanblee

37. On May 6, 2013, Plaintiff Poor Bear, Vice President of the Oglala Sioux Tribe, wrote the Board of Jackson County Commissioners to ask the Board to establish and staff a satellite office for voter registration and in-person absentee voting in Wanblee. The letter requested that such an office be established for the primary and general elections in 2014 and for all future elections. The letter further stated that, at the request of Mr. Poor Bear and on behalf of the Oglala Sioux Tribe, O.J. Semans, Executive Director of Four Directions, Inc., would attend the Board of Jackson County Commissioners' meeting on May 13, 2013 to answer any questions the Board had regarding the request.

8

38. Mr. Semans attended the May 13, 2013 meeting of the Board of Jackson County Commissioners and presented the request for a satellite office in Wanblee.

39. Upon information and belief, between November 2013 and February 2014, South Dakota's Help America Vote Act ("HAVA") Task Force met several times to revise the State's HAVA Plan. The Task Force approved a revised plan in February 2014 which included a provision for Jackson County to use HAVA funds to establish a satellite office.

40. Upon information and belief, the Jackson County Board of Commissioners and Defendant Wilson were regularly provided with updates about the work of the HAVA Task Force to revise the State's HAVA Plan and received drafts of the proposed revisions to the State's HAVA Plan and a copy of the revised plan ("Revised HAVA Plan") that the Task Force approved in February.

41. In April 2014, Bret Healy, a consultant for Four Directions, Inc., attended a meeting of the Board of Jackson County Commissioners where he explained the funding that would be available through the Revised HAVA Plan to establish a satellite office in Jackson County.

42. On June 20, 2014 the Board of Jackson County Commissioners discussed the request for a satellite office in Wanblee.

43. The minutes from the June 20, 2014 meeting state that "The state HAVA [Help America Vote Act] plan does not designate the expense of such sites by the three counties as being allowable reimbursable expenses with the HAVA grant funds. This would be an additional expense for Jackson County."

44. The minutes from the June 20, 2014 meeting also state,

> Discussion was held on the information received that Jackson County meets the criteria to establish a satellite absentee voting

9

> site through the South Dakota HAVA plan, but that reimbursement of expenses to Jackson County through HAVA grant funding is not shown. Vicki Wilson, Auditor, reported that she had sent an e-mail to Secretary of State Gant about reimbursement of expenses for such sites, but has not received a response. Stilwell moved, Denke seconded, that Jackson County not establish satellite voting sites due to no response on state or federal funding for such sites, and also due to no county funding available.

45. Funding for the proposed satellite office in Wanblee is currently available under South Dakota's HAVA Plan.

46. Upon information and belief, Defendants are aware of the availability of HAVA funding to establish a satellite office in Jackson County.

**South Dakota's Revised HAVA Plan Provides Funding for the Satellite Office**

47. Section 20901 of the Help America Vote Act ("HAVA") provides funding to enable states and counties to improve the number and accessibility of polling places.

48. The State of South Dakota has implemented HAVA funding via its State Plan, which was originally implemented in 2004 and has been revised several times since 2004.

49. South Dakota revised its HAVA plan in 2014 ("Revised HAVA Plan"). The Revised HAVA Plan provides that "a county may be allowed to use HAVA funds to set-up an additional in-person satellite absentee voting location" if the jurisdiction has (1) "50% more individuals below the poverty line than the rest of the county" and (2) the voters living in the jurisdiction "[l]ive, on average, 50% farther from the existing county seat or other satellite location than the rest of the county."

50. The Revised HAVA Plan specifies that Jackson County satisfies the criteria for establishing additional in-person satellite absentee voting locations.

10

51. The United States Election Assistance Commission published South Dakota's Revised HAVA Plan on July 2, 2014 in the Federal Register, 79 Fed. Reg. 37732, noting that the State could begin implementation of the plan 30 days later.

52. The Revised HAVA Plan became effective August 1, 2014.

53. The Revised HAVA Plan designates the expense of a satellite office in Jackson County as an allowable reimbursable expense from HAVA grant funds. The cost of a satellite office in Wanblee would not be an additional expense for Jackson County.

## History of Discrimination in Voting

54. In addition to the depressed socio-economic status of Native Americans in Jackson County discussed in Paragraphs 36 and 37, there is a long history of racial discrimination against Native Americans in South Dakota, including discrimination in voting.

55. When South Dakota became a state in 1889, the right to vote was largely restricted to free white men and it was illegal to create precincts on Indian reservations.

56. Although the Indian Citizenship Act was passed in 1924 giving full rights of citizenship to Native Americans, South Dakota continued to ban Native Americans from voting or holding office until the 1940s.

57. Native Americans in "unorganized counties" were forbidden from voting until the mid-1970s and residents of unorganized counties were barred from holding county office until 1980. The portion of Jackson County that is part of the Pine Ridge Reservation (and in which Wanblee is located) was a part of such an "unorganized" county, Washabaugh, until 1983.

58. Officials in South Dakota have attempted to design districts so as to reduce the impact of Native American votes, either by drawing districts so as to exclude land owned by tribal members, and only include white voters, *see United States v. Day Cnty.,* No 1:99cv-

11

01024-RHB (D.S.D. 2000), by "packing" minorities into as few districts as possible, *see Bone Shirt v. Hazeltine,* 461 F.3d 1011 (8th Cir. 2006), or otherwise malapportioning districts so as to dilute Native American representation, *see Blackmoon v. Charles Mix Cnty.*, CIV. 05-4017, 2005 WL 2738954 (D.S.D. Oct. 24, 2005).

59. A federal court found racially polarized voting in South Dakota in *Bone Shirt v. Hazeltine,* 336 F. Supp. 2d 976, 1010-17 (D.S.D. 2004), *aff'd* 461 F.3d 1011 (8th Cir. 2006). Jackson County was within the area at issue in the case.

60. Due in large part to the disparity in socio-economic status and the history of racial discrimination, Native American election turnout has historically been very low in South Dakota, despite the fact that the state typically ranks high overall in voter turnout.

### No Justification for Refusing to Open the Satellite Office

61. No legitimate interests of the Defendants will be undermined by creating the proposed satellite office. This is particularly true because the cost and burden on the County to designate a satellite office will be negligible in comparison to the irreparable harm that Plaintiffs have already suffered, and will continue to suffer, as a result of the violation of their statutory and Constitutional rights.

62. The purported reason to deny the request for a satellite office in Wanblee is tenuous, in that there is funding available for the satellite office.

63. As a result of Defendants' refusal to establish the proposed satellite office in Wanblee, Plaintiffs and other Native American citizens residing in Jackson County face significantly greater burdens and have substantially less opportunity than the white population to avail themselves of the convenience and benefits of casting in-person absentee ballots and using in-person registration. The Defendants' decision to reject a satellite location provides a

12

convenience and advantage for white residents that is not equally available to Native American residents. As a consequence, Native Americans will not have an equal opportunity to participate in federal and state elections in Jackson County in the upcoming general election on November 4, 2014, and in future elections. Said actions of the Defendants are contrary to the laws and Constitution of the United States.

### FIRST CLAIM FOR RELIEF
### (52 U.S.C. § 10301 - Violation of Section 2 of the Voting Rights Act)

64.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 64 above as if set forth fully herein.

65.   Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, protects Plaintiffs from denial or abridgment of the right to vote on account of race, color, or membership in a language minority group. Section 2 provides, in relevant part:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United State to vote on account of race or color, or [membership in a language minority group].
> (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

66.   Native Americans are recognized as a language minority group under the Voting Rights Act.

67.   Based on the totality of the circumstances, the acts and/or omissions of Defendants have resulted in the denial and/or will continue to result in the denial, of the rights of

13

the Plaintiffs to have an equal opportunity to participate in the electoral process and elect candidates of their choice in violation of Section 2 of the Voting Rights Act.

68. Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint absent relief granted by the Court.

### SECOND CLAIM FOR RELIEF
### (52 U.S.C. § 10301 and 42 U.S.C. § 1983 - Discriminatory Purpose in Violation of Section 2 of the Voting Rights Act, and the Fourteenth Amendment to the United States Constitution)

69. Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 69 above as if set forth fully herein.

70. Section 1 of the Fourteenth Amendment to the United States Constitution provides that:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

71. Defendants have no legitimate, non-racial reason for rejecting the Oglala Sioux Tribe's request that a satellite office be established for in-person voter registration and in-person absentee voting in Wanblee on the Pine Ridge Reservation.

72. Defendants refused and continue to refuse to establish a satellite office for voting in Wanblee, at least in part, because such refusal will disadvantage Native American voters in Jackson County relative to white voters in Jackson County.

73. By engaging in the acts and/or by the omissions alleged herein, Defendants acted and continue to act under color of law to deny Plaintiffs their rights that are guaranteed by the Fourteenth Amendment to the United States Constitution and Section 2 of the Voting Rights Act and will continue to violate said rights absent relief granted by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court:

1. Enter judgment in favor of Plaintiffs and against Defendants on the claim for relief as alleged in this Complaint;

2. Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that Defendants' refusal to designate a satellite office in Jackson County for in-person registration and in-person absentee voting (1) violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and (2) was made with a racially discriminatory purpose in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and the Fourteenth Amendment to the United States Constitution;

3. Grant Plaintiffs preliminary and/or permanent injunctive relief by ordering that Defendants establish a satellite office in Wanblee where voters may register to vote up to 15 days before the election, as provided for in state law, and vote in-person absentee 46 days (and/or any part thereof remaining as of the date said relief is granted) prior to the November 2014 general election and for the full in-person absentee voting and registration period authorized by South Dakota law in all future elections;

4. Issue an order pursuant to Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c) requiring Jackson County to obtain preclearance, for a necessary and appropriate period of time, from the Attorney General of the United States for any and all future changes in voting law, upon a determination that Jackson County has shown that the proposed changes do not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color;

15

5.  Issue an order pursuant to Section 3(a) of the Voting Rights Act, 52 U.S.C. § 10302(a) authorizing the appointment of Federal observers by the Director of the Office of Personnel Management to serve for such a period of time and for such political subdivisions as the Court shall determine is appropriate to enforce the guarantees of the Fourteenth Amendment to the United States Constitution;

6.  Retain jurisdiction over Defendants for such period of time as may be appropriate to ensure Defendants' compliance with relief ordered by this Court;

7.  Award Plaintiffs their reasonable attorneys' fees and costs pursuant to statute; and

8.  Grant Plaintiffs such other and further relief as may be just and equitable.

Dated this 18th day of September, 2014.

RESPECTFULLY SUBMITTED:

*[signature]*

Matthew L. Rappold
PO Box 642
Mission, SD 57555
(605) 828-1680
Matt.rappold01@gmail.com