UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS POOR BEAR, DON DOYLE, CHERYL D. BETTELYOUN, and JAMES RED WILLOW, | ) ) ) ) | Case No.: 14-5059 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS** |
| THE COUNTY OF JACKSON, a political subdivision and public corporation organized under the laws of the state of South Dakota; THE BOARD OF COMMISSIONERS FOR THE COUNTY OF JACKSON, a political subdivision and public corporation organized under the laws of the state of South Dakota; VICKI WILSON, in her official capacity as the Jackson County Auditor; GLEN BENNETT, in his official capacity as Jackson County Commissioner; LARRY DENKE, in his official capacity as Jackson County Commissioner; LARRY JOHNSTON, in his official capacity as Jackson County Commissioner; JIM STILLWELL, in his official capacity as Jackson County Commissioner; and RON TWISS, in his official capacity as Jackson County Commissioner, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW Defendants the County of Jackson, the Board of Commissioners for the County of Jackson, Vicki Wilson, Glen Bennett, Larry Denke, Larry Johnston, Jim Stillwell, and Ron Twiss ("Defendants") by and through Sara Frankenstein and Rebecca L. Mann of Gunderson, Palmer, Nelson & Ashmore, LLP, their attorneys, and respectfully submit this Statement of Undisputed Material Facts pursuant to D.S.D. Civ. LR 56.1(A) in support of

Defendants' Motion for Summary Judgment.  The following material facts present no genuine issue to be tried:

1. Plaintiffs Thomas Poor Bear, Don Doyle, Cheryl Bettelyoun and James Red Willow are enrolled members of the Oglala Sioux Tribe and reside on the Pine Ridge Reservation in Jackson County, South Dakota. (Complaint ¶¶ 9-13, Doc. 1) (Answer ¶¶ 5-6, Doc. 35.)

2. Defendant Jackson County is a political subdivision organized under the laws of South Dakota. (Complaint ¶ 14, Doc. 1) (Answer ¶ 2. Doc. 35)

3. Defendant Vicki Wilson is the Jackson County Auditor. (Complaint ¶ 15, Doc. 1) (Answer ¶ 2, Doc. 35.)

4. Defendants Glen Bennett, Larry Denke, Larry Johnston, Jim Stilwell and Ron Twiss are the Jackson County Commissioners. (Complaint ¶¶ 17-21, Doc. 1) (Answer ¶ 2, Doc. 35.)

5. On May 6, 2013, Plaintiff Poor Bear, the Vice President of the Oglala Sioux Tribe, wrote Commissioner Jim Stilwell requesting the establishment of a satellite office in Wanblee for in-person registration and in-person absentee voting. (May 6, 2013 Letter from Poor Bear to Stilwell, Doc. 74-1.)

6. The request was presented by O.J. and Barb Semans of Four Directions and Bret Healy of River Bluff Strategies at the May 13, 2013 Jackson County Commissioner Meeting. (May 13, 2013 Jackson County Commissioner Meeting Minutes, Doc. 74-2.)

7. The Jackson County Commission indicated at the May 6, 2013 meeting its "main concern would be funding of such a satellite office due to the tax limitation" and

"requested that more information be received on use of HAVA funding for this type of reimbursable expense." *Id.*

8. On April 8, 2014, Bret Healy with River Bluff Strategies and on behalf of Four Directions attended the Jackson County Commission Meeting and requested the establishment of a satellite office in Wanblee. (April 8, 2014 Jackson County Commission Meeting Minutes, Doc. 74-3.)

9. Bret Healy "reported that a task force had been established to review proposed revisions to the federal HAVA plan allowing HAVA funding to be used for such satellite offices, the federal Election Commission has approved the revisions, and the S.D. State Board of Elections will act on the matter in April. If approved at the state level, HAVA funding would be available for the 2014 South Dakota General election to establish the satellite absentee voting sites." *Id.*

10. The Jackson County Commission discussed the issue and agreed to "take no action until the revised state HAVA plan is approved by the state, and Jackson County has had time to review such plan." *Id.*

11. On May 5, 2014, the Revised HAVA Plan was approved by the State Board of Elections. (May 6, 2014 email from Johnson to county auditors, Doc. 74-4.)

12. On May 8, 2014, Auditor Vicki Wilson emailed former Secretary of State Jason Gant with questions regarding the Revised HAVA Plan. (August 20, 2014 email from Gant to Wilson, Doc. 74-5.)

13. In her email, Auditor Wilson notes a discrepancy between pages 3-4 and pages 12-13 regarding in-person absentee satellite voting offices and requests clarification from Secretary Gant. *Id.*

14. Pages 3-4 of the Revised HAVA Plan lists 35 "HAVA reimbursable expenses that are approved prior to the implementation of the HAVA Grant Program". (Revised HAVA Plan, Doc. 74-6.)

15. The "Cost for providing absentee voting locations in Shannon and Todd Counties" appears in that list and there is no mention of satellite offices being approved reimbursable expenses for any other county in that list. *Id.*

16. Pages 12-13 of the Revised HAVA Plan discuss "Additional In-Person Satellite Absentee Voting Locations" and identify criteria that must be met "before a county may be allowed to use HAVA funds to set-up an additional in-person satellite absentee voting location in a particular jurisdiction." *Id.*

17. Buffalo, Dewey and Jackson County were identified in the Revised HAVA Plan as being approved to have met the stated criteria. *Id.*

18. Right after indicating Jackson County met the stated criteria, the Revised HAVA Plan expressly indicated "If a county spends HAVA funds on an expense that is determined not to be an allowable HAVA expense, the expense shall be repaid to the State using the county's general fund." *Id.*

19. Auditor Wilson asked Secretary Gant if counties other than Shannon or Todd received HAVA funding for the preapproved reimbursable expense designated on Page 4 as "Cost for providing absentee voting locations in Shannon Todd Counties". (August 20, 2014 email from Gant to Wilson, Doc. 74-5.)

20. Auditor Wilson further asked for clarification regarding the "Additional In-Person Satellite Absentee Voting Locations" section on pages 12-13 noting, "[t]his section does not state that funding has been approved for the satellite absentee voting

locations. Has HAVA funding been approved for the satellite absentee voting locations in the three counties that meet 'the criteria'?" *Id.*

21. Auditor Wilson inquires, "[i]f the answer to Question # 2 [has HAVA funding been approved for the satellite absentee voting locations in the three counties that meet "the criteria"] is 'Yes', why are the counties not included in the list of HAVA reimbursable expenses as Shannon or Todd Counties on Page 4?" *Id.*

22. Auditor Wilson then asks, in regards to the "Additional In-Person Satellite Absentee Voting Locations" section on pages 12-13, if there is a "list of specific 'allowable HAVA expense[s]'" and requests that list advising that Jackson County does not have additional funds to pay for costs that would not be HAVA reimbursable. *Id.*

23. At the June 20, 2014 special Jackson County Commission Meeting, the Commission again discussed the request for a satellite office in Wanblee and it was reported:

> South Dakota has revised the state's Help America Vote Act (HAVA) plan to show that three counties within the state meet the criteria to establish such satellite absentee voting sties. Jackson County is one of the three counties which meet the criteria. The state HAVA plan does not designate the expense of such sites by the three counties as being allowable reimbursable expenses with the HAVA grant funds. This would be an additional expense for Jackson County.

(June 20, 2014 Jackson County Commission Special Meeting Minutes, Doc. 74-7.)

24. Additional discussion was had on the issue of HAVA funding whereby it was reported:

> Discussion was held on the information received that Jackson County meets the criteria to establish a satellite absentee voting site through the South Dakota HAVA plan, but that reimbursement of expenses to Jackson County through HAVA grant funding is not shown. Vicki Wilson, Auditor, reported that she had sent and e-mail to Secretary of State Gant about reimbursement of expenses for such sites, but has not received a response.

*Id.*

25. Jackson County then decided "not to establish satellite voting sites due to no response on state or federal funding for such sites, and also due to no county funding available." *Id.*

26. On August 20, 2014, former Secretary of State Gant responded to Auditor Wilson's email later, after the Revised HAVA Plan became effective. (August 20, 2014 email from Gant to Wilson, Doc. 74-5.) (Gant Depo. 32:6-10, Doc. 74-8.)  He clarified that Jackson County could use HAVA funds for a satellite office but would not provide a list of allowable expenses. (August 20, 2014 email from Gant to Wilson, Doc. 74-5.)

27. Jackson County has been denied HAVA reimbursement for expenses in the past. (July 7, 2015 email from Johnson to Wilson, Doc. 74-9) (Bennett Depo. 41:17-42:1, Doc. 74-10.)

28. Satellite office expenses submitted by other counties for HAVA reimbursement have also been denied by the Secretary of State. (Johnson Depo. 112:18-113:3, Doc. 74-11.)

29. There is no list of approved expenses because each Secretary of State has discretion to approve HAVA expenditures so any "list" of approved expenses changes with each secretary. (Gant Depo. 45:12-19, Doc. -74-8) (Johnson Depo. 113:4-115:24, Doc. 74-11.)

30. As of December 31, 2014, Jackson County had $24,539.90 in its state-held HAVA account. (State-Held Fund Statement for Jackson County as of October 22, 2015 Doc. 74-12.)

31. The Revised HAVA Plan provided that a HAVA Grant Board would be established by the Secretary of State and indicated there would be a HAVA grant program by which counties could apply for HAVA funds after their state-held accounts reached zero.  (Revised HAVA Plan, Doc. 74-6.)

32. The HAVA Grant Board was not established until June 15, 2015 and had its first meeting on June 19, 2015.  (Draft HAVA Grant Board and Parameters, Doc. 74-13) (State Board of Elections June 15, 2015 Meeting Minutes, Doc. 74-14) (June 17, 2015 email from Warne to county auditors, Doc. 74-15.)

33. The Revised HAVA Plan requires counties to spend "all funds in their State-Held account and County-held Match Money account" before they can apply for a HAVA grant.  (Revised HAVA Plan at pp. 3-4; 12-13, Doc. 74-6.)

34. The parameters for the HAVA Grant process were not provided to the HAVA Grant Board until October 19, 2015.  (October 19, 2015 Draft Meeting Minutes, Doc. 74-16.)

35. The parameters were finalized and became effective on November 2, 2015.  (HAVA Grant Board and Parameters, Doc. 74-17.)

36. The parameters set forth the specific criteria contained in the Revised HAVA Plan that must be met before a county may be allowed to seek HAVA funds for an in-person absentee satellite voting office.  *Id.*

37. The parameters also provided that if a county meets the criteria to use HAVA funds for an in-person absentee satellite voting office, it is *not* required to spend down their county-held HAVA fund balance prior to being awarded HAVA grant funds to

replenish their state-held HAVA account in order to pay for a satellite voting office. *Id.*

38. On November 13, 2015 Jackson County and the South Dakota Secretary of State's Office entered into a Memorandum of Agreement. (Memorandum of Agreement, Doc. 74-18.)

39. The Agreement indicates that it:

> is intended to assist Jackson County in funding federal elections, including absentee voting, in accordance with state and federal law and in compliance with and authorized by the State HAVA Plan in effect and as amended from time to time and the Help America Vote Act of 2002 Pub.L. 107-252, 42 U.S.C. § 15301 et seq. as directed by the Secretary of State.

*Id.* at ¶ 3.

40. The Agreement provides that South Dakota Secretary of State will reimburse Jackson County from the State's state-held HAVA account various amounts as needed up to $61,684 to be used in accordance with HAVA. *Id.* at ¶ 4(a).

41. The Agreement indicates that the funds will be available to Jackson County as provided and authorized through South Dakota's HAVA Plan to fund a satellite office. *Id.* at ¶ 4(c).

42. The Agreement requires Jackson County to appropriate and expend funds to pay for federal elections in Jackson County, including funding for an in-person absentee satellite voting location until January 1, 2023. *Id.* at ¶ 5.

43. On November 13, 2015 Jackson County passed Resolution # 2015-15 authorizing Jackson County to enter into the Memorandum of Agreement. (Resolution # 2015-15, Doc. 74-19.)

44. On November 13, 2015 Jackson County also passed Resolution # 2015-16 establishing an in-person absentee voting satellite office in Wanblee for the statutory absentee voting period and to provide notice of such to the public through 2022. (Resolution #2015-16, Doc. 74-20.)

45. Auditor Wilson estimated the expenses for staffing a satellite office to include salaries, mileage and meals for a total cost of $7,710.50 for each election. (Affidavit of Vicki Wilson, Doc. 74-21.)

46. The estimated cost to staff a satellite office in Wanblee for in-person absentee voting for the entire statutory period for the next four election cycles is $61,684 ($7,710.50 x 8 (4 primary and 4 general elections)). (Affidavit of Vicki Wilson, Doc. 74-21.)

47. The Agreement provides that the Secretary of State will fund Jackson County's HAVA account up to $61,684 which is enough to staff a satellite office in Wanblee for the next four election cycles. (Memorandum of Agreement, Doc. 74-18.)

48. The only reason the Jackson County Commission did not vote to establish the satellite office was due to funding. (Bennett Depo. 28:11-14; 40:19-42:1; 44:17-21, Doc. 74-10) (Stilwell Depo. 43:3-7; 43:16-21; 45:19-46:12, Doc. 74-22) (Johnston Depo. 18:18-19:10, Doc. 74-23) (Denke Depo. 24:14-19; 27:24-28:5; 29:4-10; 31:22-25, Doc. 74-24.)

49. The Jackson County Commission was unaware what expenses, if any, would be HAVA-reimbursable because the Revised HAVA Plan did not itemize or guaranteed which satellite office expenses, if any, would be HAVA-reimbursable. (Bennett Depo. 40:19-42:1; 54:5-55:11, Doc. 74-10) (Stilwell Depo. 45:19-46:12; 49:15-19;

60:8-24; 77:22-78:1, Doc. 74-22) (Wilson Depo. 131:2-132:9, Doc. 74-25) (Johnston Depo. 18:18-19:10; 30:11-18, Doc. 74-23.)

50. Jackson County is less than 50% tax base and in 2013 and 2014, Jackson County's financial situation was in dire straights. (Bennett Depo. 23:4-11; 56:9-57:12, Doc. 74-10) (Stilwell Depo. 43:16-21; 75:17-78:13, Doc. 74-22) (Denke Depo. 26:8-18; 42:11-15 Doc. 74-24.)

51. Each Plaintiff responded to the following Request for Admission as follows:

> **Request for Admission No. 1:** Admit that Native American residents of the Pine Ridge Indian Reservation are usually able to elect candidates of choice.
>
> **Response to Request for Admission No. 1:** [Plaintiff] objects to Request No. 1 on the grounds that it is vague and ambiguous in that the terms "usually" and "candidates of their choice" are not defined and the request does not specific a time period, offices, any particular election(s) or candidates and, as such, is not sufficiently specific to enable a response. [Plaintiff] additionally objects to Request No. 1 as ambiguous in that it is unclear if the Request relates to areas outside of Jackson County and, if so, objects that, to the extent the request relates to areas outside of Jackson County, the request is not designed to lead to admissible information. Subject to and without waiving the foregoing objections, [Plaintiff] responds that [s]he lacks sufficient information to admit or deny this Request and has been unable to obtain such information despite reasonable inquiry, and therefore denies the same.

(Poor Bear Discovery Answers, Doc. 74-26) (Doyle Discovery Answers, Doc. 74-27) (Bettelyoun Discovery Answers, Doc. 74-28) (Red Willow Discovery Answers, Doc. 74-29.)

52. Each Plaintiff responded to the following Request for Admission as follows:

> **Request for Admission No. 2:** Admit that Native American residents of Jackson County are usually able to elect candidates of choice.

> **Response to Request for Admission No. 1:** [Plaintiff] objects to Request No. 2 on the grounds that it is vague and ambiguous in that the terms "usually" and "candidates of their choice" are not defined and the request does not specific a time period, offices, any particular election(s) or candidates and, as such, is not sufficiently specific to enable a response. Subject to and without waiving the foregoing objections, [Plaintiff] responds that [s]he lacks sufficient information to admit or deny this Request and has been unable to obtain such information despite reasonable inquiry, and therefore denies the same.

(Poor Bear Discovery Answers, Doc. 74-26) (Doyle Discovery Answers, Doc. 74-27) (Bettelyoun Discovery Answers, Doc. 74-28) (Red Willow Discovery Answers, Doc. 74-29.)

53. Election results are available online at the Secretary of State's website and results can be seen by county. http://electionresults.sd.gov/; https://sdsos.gov/elections-voting/election-resources/election-history/election-history-search.aspx.

54. Discovery closed in this case on December 11, 2015. (Scheduling Order at ¶ 2, Doc. 38.)

55. Jackson County submitted $4,424.11 in expenses for the satellite office that was open 11 days prior to the November 2014 election. (Jackson County HAVA Reimbursement Request Form dated August 27, 2015, Doc. 74-30.)

56. As of October 22, 2015, Jackson County's HAVA balance was $1,541.64. (Jackson County State-Held Statement dated October 22, 2015, Doc. 74-12.)

-12-

Dated this 22nd day of January, 2016.

        GUNDERSON, PALMER, NELSON
          & ASHMORE, LLP

By:  */s/ Rebecca L. Mann*
     Sara Frankenstein
     Rebecca L. Mann
     *Attorneys for Defendants*
     506 Sixth Street
     P.O. Box 8045
     Rapid City, SD  57709
     Telephone: (605) 342-1078
     Telefax:  (605) 342-0480
     E-mail:  rmann@gpnalaw.com

## CERTIFICATE OF SERVICE

    I hereby certify on January 22, 2016, a true and correct copy of the **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS** was served electronically through the CM/ECF system on the following individuals:

Ann Mary Olson
Dechert LLP
One Bush Street, Suite 1600
San Francisco, CA 94101
(415) 262-4572
annmary.olson@dechert.com
*Attorneys for Plaintiffs*

Neil A. Steiner
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
neil.steiner@dechert.com
*Attorneys for Plaintiffs*

Erik Snapp
Dechert LLP
77 West Wacker Drive
Suite 3200
Chicago, IL 60601
(312) 646-5800
Erik.Snapp@dechert.com
*Attorneys for Plaintiffs*

Matthew Rappold
Rappold Law Office
PO Box 642
Mission, SD 57555
(605) 828-1680
Matt.rappold01@gmail.com
*Attorneys for Plaintiffs*

Arusha Gordon
Robert A. Kengle
Maura Eileen O'Connor
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
(202) 662-8600
agordon@lawyerscommittee.org
rkengle@lawyerscommittee.org
eoconnor@lawyerscommittee.org
*Attorneys for Plaintiffs*

James D. Leach
1617 Sheridan Lake Rd.
Rapid City, SD 57702
(605) 341-4400
jim@southdakotajustice.com
*Attorney for the Plaintiffs*

By: */s/ Rebecca L. Mann*
      Rebecca L. Mann