UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| THOMAS POOR BEAR, DON DOYLE, CHERYL D. BETTELYOUN, and JAMES RED WILLOW,<br><br>    Plaintiffs,<br><br> vs.<br><br>THE COUNTY OF JACKSON, a political subdivision and public corporation organized under the laws of the state of South Dakota;<br>THE BOARD OF COMMISSIONERS FOR THE COUNTY OF JACKSON, a political subdivision and public corporation organized under the laws of the state of South Dakota;<br>VICKI WILSON, in her official capacity as Jackson County Auditor;<br>GLEN BENNETT, in his official capacity as Jackson County Commissioner;<br>LARRY DENKE, in his official capacity as Jackson County Commissioner;<br>LARRY JOHNSTON, in his official capacity as Jackson County Commissioner;<br>JIM STILLWELL, in his official capacity as Jackson County Commissioner; and<br>RON TWISS, in his official capacity as Jackson County Commissioner,<br><br>    Defendants. | 5:14-CV-05059-KES<br><br><br><br><br>MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS |

  Plaintiffs seek injunctive and declaratory relief that will require defendants to establish a satellite office for voter registration and in-person absentee voting in the town of Wanblee on the Pine Ridge Indian Reservation.

Docket 1. Defendants move to dismiss the complaint on grounds of ripeness. Docket 45. For the following reasons, the motion to dismiss is granted.

## BACKGROUND

Plaintiffs are enrolled members of the Oglala Sioux Tribe who reside on the Pine Ridge Indian Reservation in Jackson County, South Dakota. Defendants are entities and individuals responsible for managing elections in Jackson County. All individual defendants are named as defendants in their official capacities.

The Pine Ridge Indian Reservation, located in southwestern South Dakota, encompasses the southern half of Jackson County. Wanblee is the most populous city in the portion of Jackson County that is located on the Pine Ridge Reservation. Wanblee is located roughly 27 miles from Kadoka, the county seat of Jackson County. Approximately 90 percent of Wanblee's population is Native American.

Plaintiffs filed this action on September 18, 2014. The complaint alleges that the defendants violated both the Voting Rights Act and the Fourteenth Amendment by providing an in-person voter registration and in-person absentee voting office in Kadoka, but not in Wanblee. Plaintiffs seek to establish a permanent satellite office in Wanblee for in-person registration and in-person absentee voting. Plaintiffs also seek an order mandating that Jackson County obtain preclearance from the United States Attorney General for any future changes to election procedures that would remove the satellite office.

On October 10, 2014, plaintiffs moved for a preliminary injunction, which sought to require Jackson County to establish a satellite office in Wanblee for the time period leading up to the general election on November 4, 2014. On October 15, 2014, the parties participated in a settlement conference before United States Magistrate Judge Veronica Duffy. After the settlement conference, Jackson County agreed to fund a satellite office for the remaining time period leading up to the 2014 general election.

On November 13, 2015, the Jackson County Commission formed an agreement with the South Dakota Secretary of State's Office (SDSOS), and it passed Resolutions #2015-15 and #2015-16. The agreement established that SDSOS will provide funds necessary to operate a satellite office in Wanblee during all federal primary and general elections through January 1, 2023. The agreement provides that SDSOS will "reimburse Jackson County, from the State's state-held HAVA[1] account, various amounts needed as shown by appropriate reimbursement forms and applicable receipts, up to the amount of sixty-one thousand, six hundred eighty-four dollars ($61,684)[2] to be used for an in-person absentee satellite voting site in accordance with the State HAVA plan[.]" Docket 47-10 at 3. The Jackson County Commission adopted the terms of the agreement with SDSOS in Resolution #2015-15. Docket 47-11.

---

[1] The Help America Vote Act was enacted to establish minimum election administration standards and to improve accessibility and quantity of polling places. Help America Vote Act of 2002, Pub. L. No. 107-252, § 101, 116 Stat. 1666 (2002).

[2] Jackson County Auditor, Vicki Wilson, estimates that the cost to fund a satellite office in Wanblee is $7,710.50 per election. Because each election year consists of a primary and general election, $61,684 is needed to sufficiently fund the office through January 1, 2023.

Resolution #2015-16 established that Jackson County shall fund a satellite office in Wanblee from 9 a.m. to 5 p.m., during week days, for the statutory absentee voting period leading up to primary and general elections for the election years of 2016, 2018, 2020, and 2022.[3] Docket 47-12. With funding in place for the satellite office, defendants move to dismiss the complaint on grounds of ripeness. Docket 45.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). Under a motion to dismiss based on lack of subject matter jurisdiction, the defendant may challenge either the plaintiff's complaint on its face or the factual deficiencies of the claims. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn*, 918 F.2d at 729 n.6). A motion to dismiss based on lack of subject matter jurisdiction can be raised at any time under Federal Rule of Civil Procedure 12(h)(3). And if at any time the court concludes that "it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Ripeness is peculiarly a question of timing and is governed by the situation at the time of review, rather than the situation at the time of the events under review." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 867 (8th Cir. 2013) (quotations and citations omitted).

---

[3] A voter may vote by absentee ballot beginning 46 days prior to an election. SDCL 12-19-1; 12-19-12.

Plaintiffs carry the burden of establishing that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730. Thus, the existence of disputed material facts does not prevent the trial court from analyzing the merits of the jurisdictional claims, and no presumption of truthfulness must attach to the facts alleged in the complaint. *Id.*

## DISCUSSION

Defendants claim that sufficient funding for the satellite office is secure through 2022. Therefore, defendants argue that the case is not ripe for review because it does not pose a purely legal issue and the development of additional facts will aid judicial review. Defendants also claim that potential harm stemming from delayed review is speculative and uncertain to occur.

Plaintiffs respond that the agreement between Jackson County and SDSOS does not resolve all the future satellite office issues because it fails to address local elections that occur during non-federal elections. Plaintiffs also argue that the Jackson County Commission is not bound by the agreement because funding from SDSOS is not guaranteed. Finally, plaintiffs submit that defendants' "voluntary cessation" of the challenged conduct does not deprive the court of its power to adjudicate this dispute.

Under Article III there must be a case or controversy at every stage of the litigation, which requires " 'a definite and concrete controversy involving adverse legal interests[.]' " *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 983 (8th Cir. 2009) (quoting *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations and quotations omitted). The ripeness test involves an analysis of both " 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " *Pub. Water Supply Dist. No. 10 of Cass Cty., Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572-73 (8th Cir. 2003).

### A.    Fitness of the Issues.

"The fitness for judicial decision inquiry goes to a court's ability to visit an issue." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000) (quotations omitted). "Whether a case is 'fit' depends on whether it would benefit from further factual development[,]" *Pub. Water Supply Dist. No. 10*, 345 F.3d at 573, and "whether the harm asserted has 'matured enough to warrant judicial intervention.' " *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (quoting *Vogel v. Foth and Van Dyke Assocs., Inc.*, 266 F.3d 838, 840) (8th Cir. 2001) (stating that the ripeness doctrine seeks to prevent courts from becoming entangled in abstract disagreements)). "The case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities." *Pub. Water Supply Dist. No. 10*, 345 F.3d at 573.

6

The court finds that this case will benefit from further factual development because it depends on multiple contingencies. As an initial matter, the court notes the similarity between the dispute here and the dispute in *Brooks v. Gant*, 2013 WL 4017036 (D.S.D. Aug. 6, 2013). Both disputes address the lack of funding for satellite voting offices on the Pine Ridge Indian Reservation. *See Id.* at *1. Both disputes also resulted in agreements between the county and SDSOS that provide funding for the satellite voting offices for years to come. *See Id.* at *2. Aside from the dollar amounts required to fund the satellite offices, the terms of the agreements are virtually identical.

In *Brooks*, the court found that the case would benefit from additional factual development because the dispute stemmed from funding issues that may not come to fruition and facts that were subject to considerable change. *Id.* at *4. The same rationale applies here as well. With funding in place through 2022, any potential funding shortfall is a "contingent future event[] that may not occur as anticipated, or indeed may not occur at all." *See Texas v. United States*, 523 U.S. at 300; *see also Vogel*, 266 F.3d at 840 (stating that the ripeness doctrine seeks to prevent judicial review of abstract disagreements).

Plaintiffs argue that *Brooks* is inapposite here because the *Brooks* plaintiffs failed to identify that non-federal elections are not contemplated in the agreement between the county and SDSOS. Specifically, plaintiffs assert that school board elections and special elections are both examples of non-federal elections that will occur without funding for a satellite office in Wanblee. But school board elections are not administered by Jackson County;

7

they are administered by the Kadoka Area School District, which is not a named defendant in this action. *See* SDCL 13-7-10 (stating that the school board shall select the date of the election); 13-7-11 ("The number and place of voting precincts shall be determined by the school board"). Additionally, plaintiffs have not identified any special election that is certain to occur before 2023, and special "federal" elections are covered by the terms of the agreement. With the agreement between Jackson County and SDSOS in place, facts obtained from implementation of the agreement will clarify any future disputes associated with sufficient funding for the satellite office. Thus, the fitness prong weighs in favor of finding the claims are unripe for judicial review.

### B.    Hardship Stemming from Delay.

"Regarding the 'hardship' prong, '[a]bstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct.' " *Pub. Water Supply Dist. No. 10*, 345 F.3d at 573 (alterations in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (internal quotations and citations omitted)). "The plaintiffs need not wait until the threatened injury occurs, but the injury must be 'certainly impending.' " *Id.* (quoting *Paraquad, Inc. v. St. Louis Hous. Auth.,* 259 F.3d 956, 958-59 (8th Cir. 2001)).

The court finds that any harm to the plaintiffs potentially resulting from delayed review is uncertain to occur. Plaintiffs' brief establishes as much: "Jackson County can rescind the resolution to provide a satellite office for in-

person registration and in-person absentee voting *in the event HAVA funding is unavailable* to reimburse the county for the expenses of maintaining the office." Docket 51 at 20 (emphasis added). While a possibility exists that SDSOS HAVA funding might be insufficient in the future, there is no current funding shortfall. SDSOS has committed to reimburse Jackson County up to $61,684 from the SDSOS HAVA fund that currently holds approximately $6,500,000. *See* Docket 52-10 at 6. Plaintiffs merely speculate that funding will be inadequate in the future. Such speculation is insufficient grounds for establishing that harm will result from delayed judicial review. *See Pub. Water Supply Dist. No. 10*, 345 F.3d at 573. Thus, plaintiffs have failed to meet their burden of establishing that they will suffer concrete harm as a result of delayed review of this case.

    **C.    Voluntary Cessation and Mootness.**

As to plaintiffs' argument pertaining to voluntary cessation, the court finds such analysis unpersuasive. Precedent cited by plaintiffs establishes that voluntary cessation is a relevant consideration when a mootness defense is asserted. *See* Docket 51 at 13 (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-89 (1982) (reviewing whether voluntary cessation rendered claims moot); *Ctr. for Special Needs Trust Admin., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) ("The test for mootness is stringent. Mere voluntary cessation of allegedly illegal conduct does not moot a case; otherwise, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' ") (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953))).

But the doctrines of mootness and ripeness employ distinct analyses. Where a case may be dismissed as moot if it "no longer presents a live case or controversy," *Minn. Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999), the ripeness doctrine seeks to prevent premature judicial review of issues that may not come to fruition. *See Paraquad, Inc.*, 259 F.3d at 958; *see also* 13B Charles Alan Wright et al., Federal Practice and Procedure § 3532.1 ("As compared to mootness, which asks whether there is anything left for the court to do, ripeness asks whether there yet is any need for the court to act."). Because voluntary cessation analysis contemplates prior conduct, it can only apply to mootness analysis. Thus, plaintiffs' argument pertaining to defendants' voluntary cessation does not provide a basis for finding plaintiffs' claims ripe for judicial review.

## CONCLUSION

Plaintiffs bear the burden of establishing that the court has subject matter jurisdiction over this action. In response to the motion to dismiss on grounds of ripeness, plaintiffs failed to meet their burden of establishing that the record is sufficiently developed and that they will suffer a concrete harm stemming from delayed judicial review. Because the court finds that this case is not ripe for judicial review, it is

ORDERED that the motion to dismiss (Docket 45) is GRANTED, and the complaint is dismissed without prejudice.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (Docket 56) is DENIED as moot.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 72) is DENIED as moot.

Dated June 17, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
