UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| THOMAS POOR BEAR, DON DOYLE, CHERYL D. BETTELYOUN, and JAMES RED WILLOW,<br><br>                Plaintiffs,<br><br>    vs.<br><br>THE COUNTY OF JACKSON, a political subdivision and public corporation organized under the laws of the State of South Dakota;<br>THE BOARD OF COMMISSIONERS FOR THE COUNTY OF JACKSON, a political subdivision and public corporation organized under the laws of the State of South Dakota;<br>VICKI WILSON, in her official capacity as the Jackson County Auditor<br>GLEN BENNETT, in his official capacity as Jackson County Commissioner;<br>LARRY DENKE, in his official capacity as Jackson County Commissioner;<br>LARRY JOHNSTON, in his official capacity as Jackson County Commissioner;<br>JIM STILWELL, in his official capacity as Jackson County Commissioner; and<br>RON TWISS, in his official capacity as Jackson County Commissioner,<br><br>                Defendants. | 5:14-CV-05059-KES<br><br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR ATTORNEY FEES AND COSTS |

Plaintiffs seek attorney fees and costs under section 14(e) of the Voting

Rights Act, codified at 52 U.S.C. § 20510(c). Docket 96. Defendants oppose the

motion. Docket 100. On July 11, 2016, this court granted plaintiffs' motion to limit

its motion for attorney fees to address only the issue of entitlement to attorney fees and costs. Docket 95. For the reasons that follow, the court denies plaintiffs' motion for attorney fees and costs.

## BACKGROUND[1]

The Pine Ridge Indian Reservation is located in southwestern South Dakota and encompasses the southern half of Jackson County and all of Oglala Lakota County, South Dakota. Plaintiffs are enrolled members of the Oglala Sioux Tribe who reside in Jackson County, South Dakota, on the Pine Ridge Indian Reservation. Defendants are entities and individuals responsible for managing elections in Jackson County.

Plaintiffs filed this action on September 18, 2014, seeking injunctive and declaratory relief that would require defendants to establish a satellite office for voter registration and in-person absentee voting in the town of Wanblee on the Pine Ridge Indian Reservation. On October 15, 2014, the parties participated in a settlement conference before United States Magistrate Judge Veronica Duffy. After the settlement conference, Jackson County agreed to fund a satellite office for the remaining time period leading up to the 2014 general election.

On November 13, 2015, the Jackson County Commission formed an agreement with the South Dakota Secretary of State's Office under which all funds necessary to operate a satellite office in Wanblee would be provided during all federal primary and general elections through January 1, 2023. With funding in place for the satellite office, defendants moved to dismiss the complaint on

---

[1] Additional background facts can be found in the court's prior memorandum opinion and orders. Docket 34 at 2-6 and Docket 92 at 2-4.

2

grounds of ripeness. Docket 45. Defendants' motion to dismiss on ripeness

grounds was granted on June 17, 2016. Docket 92.

## DISCUSSION

### I.   Standard for Award of Attorney Fees

" 'In the United States, parties are ordinarily required to bear their own

attorney's fees—the prevailing party is not entitled to collect from the loser.' " *Doe*

*v. Nixon*, 716 F.3d 1041, 1048 (8th Cir. 2013) (quoting *Buckhannon Bd. & Care*

*Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001)). "An

exception to this general rule applies when Congress has provided explicit

statutory authority for awarding fees to a prevailing party." *Id.* One such exception

is found in the Voting Rights Act, which provides that a "court may allow the

prevailing party (other than the United States) reasonable attorney fees, including

litigation expenses, and costs." 52 U.S.C. § 20510(c).

In *Buckhannon*, 532 U.S. at 604-05, the Supreme Court set forth a two-part

test for determining whether a party is considered a prevailing party when there is

no final judgment on the merits of the case.[2] The first step requires a party to

demonstrate a "material alteration of the legal relationship of the parties." *Id.* at

604 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782,

792–93 (1989)). The second step requires that the relief be "judicially sanctioned."

*Id.* at 605. Only when both steps of this analysis are satisfied, can a party be

---

[2] The term "prevailing party" is to be interpreted consistently whenever it is used
by Congress in a fee-shifting statute. *See, e.g.*, *CRST Van Expedited, Inc. v.*
*E.E.O.C.*, 136 S.Ct. 1642, 1646 (2016) (citing *Buckhannon*, 532 U.S. at 602-03)
("Congress has included the term 'prevailing party' in various fee-shifting statutes,
and it has been the Court's approach to interpret the term in a consistent
manner.")); *Cody v. Hillard*, 304 F.3d 767, 773 n.3 (8th Cir. 2002) ("We agree with
our sister circuits that *Buckhannon* applies broadly to fee-shifting statutes that
employ the 'prevailing party' language.").

deemed a prevailing party. *See Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009) ("The material alteration and the judicial sanction are two separate requirements."); *see also Coates v. Powell*, 639 F.3d 471, 474 (8th Cir. 2011) ("A 'prevailing party' is one that obtains a judicially sanctioned, material alteration of the legal relationship of the parties.").

Through its *Buckhannon* decision, "the Supreme Court rejected the 'catalyst theory' then prevailing in the circuit courts, which permitted a plaintiff to recover fees if the lawsuit achieved the desired result through a voluntary change in the defendant's conduct." *N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1085 (8th Cir. 2006). The Supreme Court "determined that a legal change, rather than a voluntary change, in the relationship of the parties is required [to confer prevailing party status]." *Christina A. v. Bloomberg*, 315 F.3d 990, 992 (8th Cir. 2003). Thus, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon*, 532 U.S. at 605. In determining what actions provide the necessary judicial *imprimatur* to bestow prevailing party status, the Eighth Circuit has observed that "a mere private settlement does not qualify, because '[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees.' " *Bill M. v. Neb. Dep't of Health & Human Servs. & Fin. Support*, 570 F.3d 1001, 1003 (8th Cir. 2009) (quoting *Buckhannon*, 532 U.S. at 604 n.7); *see also Buckhannon*, 532 U.S.at 604 n.7 (observing that "federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal").

## II.    Whether Plaintiffs were a Prevailing Party

Plaintiffs did not obtain a final judgment because the court dismissed as moot plaintiff's case. *See* Docket 92. Thus, for plaintiffs to be considered the prevailing party thereby allowing plaintiffs to recover attorney fees under the Voting Rights Act, they must meet both steps of *Buckhannon's* two-part test as described above. *See Loudner v. United States*, 379 F.Supp.2d 1048, 1051 (D.S.D. 2005) (describing how the relief obtained by a prevailing party must " 'materially alter[] the legal relationship between the parties' " and that " 'the change in the relationship must be judicially sanctioned' " (quoting *Sierra Club v. City of Little Rock,* 351 F.3d 840 (8th Cir.2003))).

### A.    Whether there was a "Material Alteration of the Legal Relationship"

With regard to the first step of the *Buckhannon* test, 532 U.S. at 604, plaintiffs advance several arguments in an attempt to show a "material alteration of the legal relationship of the parties." First, plaintiffs argue that the action was not dismissed "because of a voluntary change in conduct by Jackson County but because Jackson County bound itself in an agreement with the State of South Dakota to maintain the in-person absentee voting location on the Pine Ridge Reservation for every federal primary and general election through December 31, 2022." Docket 97 at 7. Next, plaintiffs argue that because they "are residents of Jackson county and the Pine Ridge Reservation, they are among the beneficiaries of [the] state-enforced contract [to operate a satellite office in Wanblee, South Dakota]." *Id.* at 8. Finally, plaintiffs contend that Jackson County's decision to have the agreement to operate a satellite office enforced "by the executive branch

5

rather than the judiciary makes its agreement no less public than a consent decree." Docket 101 at 3. Essentially, plaintiffs use these arguments to show that they are entitled to prevailing party status because they obtained the relief they sought based on the merits of their claims.

In *Northern Cheyenne Tribe*, 433 F.3d at 1086, the Eighth Circuit affirmed this court's denial of attorney's fees where "the Tribes achieved their desired result . . . for reasons unrelated to the merits of the Tribes' RFRA and RLUIPA claims, and because of voluntary decisions by the other defendants to abandon the shooting range project." *Id.* Under such circumstances, the Court of Appeals observed how "it would be ironic, to say the least, if the Tribes were awarded attorneys' fees against the defendant whose voluntary action triggered this result." *Id.* Thus, because the Tribes only achieved their desired result following the voluntary action of the defendant, the Eighth Circuit concluded that "under *Buckhannon*, the Tribes may not be awarded attorneys' fees as prevailing parties." *Id.* at 1087.

Plaintiffs fail to distinguish their case from *Northern Cheyenne Tribe*. Here, the court denied plaintiffs' request for a preliminary injunction as moot following the agreement between Jackson County and the State of South Dakota to operate a satellite office in Wanblee, South Dakota, during the 2014 general election. *See* Docket 34 at 6 n.3. Thus, plaintiffs cannot point to the court's decision to deny the request for a preliminary injunction in attempting to show that there was a material alteration in the legal relationship of the parties. Further, plaintiffs have failed to demonstrate how defendants' actions were anything other than voluntary. And as noted above, the Supreme Court has rejected the "catalyst theory" as a

6

basis for determining whether a party was a "prevailing party" because that theory "allows an award [of attorney fees] where there is no judicially sanctioned change in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 605.

While plaintiffs may be correct that they are the beneficiaries of the agreement between Jackson County and the State of South Dakota to operate a satellite office, plaintiffs fail to show how Jackson County's voluntary action of entering into the agreement alters the legal relationship between plaintiffs and defendants. And plaintiffs cite no authority to support their argument that Jackson County's decision to have the agreement to operate a satellite office enforced "by the executive branch rather than the judiciary makes its agreement no less public than a consent decree." Docket 101 at 3. Thus, plaintiffs have failed to show that under the first step of the *Buckhannon* test, 532 U.S. at 604, there was a material alteration of the legal relationship of the parties. Thus, under these circumstances, "it would be ironic, to say the least, if [plaintiffs] were awarded attorneys' fees against the defendant[s] whose voluntary action triggered this result." *N. Cheyenne Tribe*, 433 F.3d at 1086.

**B. Whether Plaintiffs' Relief was "Judicially Sanctioned"**

Even if the court concluded that there was a material alteration of the legal relationship of the parties, plaintiffs would still have to show under the second part of the *Buckhannon* test, 532 U.S. at 605, that they received relief that was "judicially sanctioned." Plaintiffs make two main arguments to show that they received "judicially sanctioned" relief and are entitled to prevailing party status.

First, plaintiffs argue that the decision to open the satellite office in Wanblee, South Dakota, for the 2014 general election was the result of "a

7

settlement conference conducted by Magistrate Judge Veronica L. Duffy on October 15, 2014," which led to "a cancellation by the Court of the preliminary injunction hearing scheduled for October 17, 2014." Docket 97 at 6. According to plaintiffs, these events "certainly constitutes 'judicial *imprimatur*' on Defendants' change of conduct prior to the 2014 general election." Docket 101 at 3.

Plaintiffs next argue that evidence of judicially sanctioned relief can be found in the timing of defendants' agreement with the State of South Dakota to operate a satellite office. To support this argument, plaintiffs allege that defendants were "mischievous" and forced plaintiffs to litigation "through extensive fact discovery and service of expert witness reports before changing its conduct," and "avoid[ing] a trial on the merits only by contractually binding itself . . . to provide all the relief Plaintiffs sought for at least eight years." Docket 97 at 7. Plaintiffs also allege that a judicial *imprimatur* can be found in the fact that defendants only entered into the agreement with the State of South Dakota to operate a satellite office—which led the court to dismiss plaintiffs' case on ripeness grounds—at "the close of discovery and [as] summary judgment practice was looming." Docket 101 at 5.

The Eighth Circuit's decision in *Coates v. Powell*, 639 F.3d 471, 475 (8th Cir. 2011), is instructive here. In *Coates*, the parties entered into a settlement agreement the night before trial. *Id.* This agreement was never written into a formal settlement contract or incorporated into a settlement decree or incorporated into a judgment for dismissal. *Id.* Thus, under these facts the Court of Appeals determined that "the district court took no action judicially sanctioning or materially altering the legal relationship of the parties." *Id.*; *see also Coates*, 639

8

F.3d at 475 (concluding that there was "no judicial imprimatur on the settlement which could give rise to prevailing party status").

Additionally, in determining whether a private settlement can provide the necessary judicial *imprimatur* to bestow prevailing party status, the Eighth Circuit has observed that "a mere private settlement does not qualify, because '[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees.' " *Bill M.*, 570 F.3d at 1003 (quoting *Buckhannon*, 532 U.S. at 604 n.7); *see also Buckhannon*, 532 U.S. at 604 n.7 (observing that "federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal"); *Christina A.*, 315 F.3d at 992-93 (concluding that a district court's review of a class action settlement agreement for fairness and reasonableness "does not require the court to establish the terms of the agreement" and therefore is only a private settlement agreement and not an enforceable judgment or consent decree).

This line of cases forecloses plaintiffs' arguments in attempting to show a judicial *imprimatur* that would give rise to prevailing party status. A court mediated agreement is not the same as a judgment on the merits, a consent decree, or a preliminary injunction—all of which involve a measure of court action and potential continued court oversight. *See, e.g.*, *N. Cheyenne Tribe*, 433 F.3d at 1085-86 (discussing various types of court actions and whether they are sufficient to result in a "*judicially sanctioned* material alteration of the legal relationship of the parties to a lawsuit" (emphasis in original)). Further, plaintiffs' argument that the mediated settlement agreement and the cancelled preliminary injunction hearing creates a judicial *imprimatur* belies the court's opinion denying the

9

preliminary injunction motion as moot. Docket 34 at 6 n.3 ("Because the parties resolved the preliminary injunction *without action by the court*, the motion for preliminary injunction (Docket 13) is denied as moot." (emphasis added)).

Additionally, plaintiff's argument that the timing of the agreement between Jackson County and the State of South Dakota to operate the satellite office creates prevailing party status is rejected. As is clear for the Eighth Circuit's decision in *Coates*, 639 F.3d at 475, the timing of a settlement agreement is irrelevant in deciding whether there is a judicially sanctioned approval of a material alteration of the legal relationship of parties.

Finally, to the extent that plaintiffs argue that the court's dismissal of plaintiffs' claim on ripeness grounds makes plaintiffs the prevailing party, the argument is also rejected. In *Doe*, 716 F.3d at 1050-51, the Eighth Circuit rejected a similar argument that a district court's order dismissing the plaintiffs' case on mootness grounds conferred prevailing party status upon the plaintiffs. Thus, under *Doe*, 716 F.3d at 1050-51, a district court's dismissal of a case on ripeness grounds also fails to confer prevailing party status upon a plaintiff. *See id.* (citing *Klamath*, 589 F.3d at 1033 (holding that order of dismissal could not confer prevailing party status because "[a]s a matter of law and logic, the district court cannot have awarded Klamath any relief if it dismissed the case because it could not grant relief. And that is exactly what a dismissal on mootness or ripeness grounds means")).

## CONCLUSION

Plaintiffs have failed to show that they were the prevailing party under the Supreme Court's two-step analysis. *See Buckhannon*, 532 U.S. at 604-05.

10

Therefore, because plaintiffs cannot show (1) a material alteration of the legal relationship between themselves and defendants (2) that was judicially sanctioned, plaintiffs are not entitled to attorney fees and costs under 52 U.S.C. § 20510(c). Thus, it is

ORDERED that plaintiffs' motion for attorney fees and costs (Docket 96) is denied.

DATED January 4, 2017.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE